IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ETHEL and WILLIAM PAYNE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STERLING JEWELERS, INC.; DBA KAY JEWELERS INC; and unknown Fictitious Parties 1-5 that caused or contributed to the harm herein alleged;<br><br>Defendants. | CIVIL ACTION NO.:CV 05-TMP-0551-S |

## MOTION FOR LEAVE TO AMEND COMPLAINT

COME NOW the Plaintiffs, and move this Honorable Court to permit the filing of the First Amended Complaint attached hereto as Exhibit A. As grounds thereof, Plaintiffs state the following.

1. Plaintiffs filed their Complaint on February 8, 2005 in the Circuit Court of Jefferson County, Bessemer Division. The Complaint was served on February 15, 2005.

2. Defendant timely removed the case to this Court on March 15, 2005. As grounds for removal, Defendant properly invoked federal question jurisdiction pursuant to 28 U.S.C. § 1331.

3. This Court has exclusive original jurisdiction over one of the claims for violations of 15 U.S.C. §§ 291-300 (Gold Stamp Act). There is no question the Court also has supplemental jurisdiction over the remainder of the claims.

4. Defendant Sterling Jewelers, Inc. answered the Complaint on March 15, 2005, the same day the case was removed.

5. Nothing further has transpired in the case since that time and no discovery has been taken. The parties are scheduled to meet and confer on April 29th as required by Rule 26(f) of the Fed.R.Civ.Proc.

6. Rule 15(a) Fed.R.Civ.Proc. provides that ". . . a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Plaintiffs First Amended Complaint comes even before the parties first meet and confer and before the initial disclosures. In addition, the causes of action remain largely unchanged in the First Amended Complaint. The substantive change being Plaintiffs specifically allege a separate count under the Gold Stamp Act. The remaining allegations are substantially the same.

7. Given the early stage of litigation and the nature of the amended complaint, justice requires Plaintiffs be given leave to file their First Amended Complaint as there is no prejudice to the Defendant, nor will it cause any delay. See; *Wallin v. Fuller*, 476 F.2d 1204 (5th Cir.1973)(A broad policy of the Federal Rules favors liberality of amendment); *McKinley v. Kaplan*, 177 F.3d 1253 (11th Cir. 1999) (Leave to amend should be 'freely given' in the absence of any apparent or declared reason such as: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of

amendment);*motorcity of Jacksonville, Ltd v. Southeast Bank, N.A.*, 83 F.3d 1317 (11th Cir. 1996) (Liberal policy of allowing amendment to complaints circumscribes exercise of district court's discretion; thus, unless substantial reason exists to deny leave to amend, discretion of district court is not broad enough to permit denial); *Halliburton & Assoc. v. Henderson, Few & Co.*, 774 F.2d 441 (11th Cir. 1985) (Although decision whether to grant leave to amend a complaint is within discretion of district court, Federal Civil Rule 15 contemplates that leave shall be granted unless there is substantial reason to deny); *Thompson v. New York Life Ins. Co.*, 644 F.2d 439 (5th Cir.1981) (Policy behind rule concerning amendment of pleadings is to freely allow amendments unless the rights of the adverse party would be unduly prejudiced, and this policy is strongest where the motion challenged is the first motion to amend).

8. In light of the fact that leave should be freely given where there is no prejudice, no undue delay, litigation is in it's infancy, and no dilatory tactics are at play, Plaintiffs should be given leave to file their First Amended Complaint.

WHEREFORE, Plaintiffs pray leave be granted to file their First Amended Complaint attached as Exhibit A hereto.

Respectfully submitted,

*/s/ G. Richard Baker*
G. Richard Baker (BAK035)
Bert J. Miano (MIA001)

-3-

**OF COUNSEL**:
CAMPBELL & BAKER LLP
505 20th Street North
825 Financial Center
Birmingham, Alabama   35203
205.278.6650 Voice
205.278.6654 Fax
rbaker@campbell-baker.com
bmiano@campbell-baker.com

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the above and foregoing pleading upon the defendant parties to this action by placing a copy of same in the U. S. Mail, postage prepaid, properly addressed as follows:

Crawford S. McGivaren, Jr.
Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP
2001 Park Place North, Suite 700
Birmingham, Alabama 35203

on this the __27__ day of __April__, 2005.

_____
OF COUNSEL

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ETHEL and WILLIAM PAYNE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STERLING JEWELERS, INC.; DBA KAY JEWELERS INC; and unknown Fictitious Parties 1-5 that caused or contributed to the harm herein alleged;<br><br>Defendants. | CIVIL ACTION NO.:CV 05-TMP-0551-S |

## FIRST AMENDED COMPLAINT

Plaintiffs, individually and on behalf of other similarly situated, file their First Amended Complaint and allege as follows:

### General Allegations Common to All Counts

1. Plaintiffs Ethel and William Payne are adult resident citizens of the City of Fairfield, Jefferson County, Alabama. Ms. Payne purchased an alleged 14K yellow gold man's diamond band for her husband, William Payne, from Defendant Kay Jewelers, in Fairfield, Alabama on June 10, 2003.

2. Kay Jewelers (hereafter "Kay") is a trade name of Sterling Jewelers, Incorporated ("Sterling"), a part of the Signet Group plc, whose principal executive offices are located in Akron, Ohio.

3. Fictitious Defendant One (1) is the entity that owns the trademark "SR".

4. Fictitious Defendants 2-5 are the agents, wholesalers, distributors or others who acted in concert with Sterling to violate various laws as more fully described below.

5. Kay is one of America's largest jewelry stores and operates 1,100 Kay department stores in all 50 states; including several stores in this District.

6. Defendants manufactured, distributed in interstate commerce, marketed and/or sold in the United States and in this District, gold jewelry alleged to be a certain fineness of gold, which contained less gold than indicated, warranted and promised.

7. Defendants are aware that the gold jewelry is karat stamped (e.g., 14k) or otherwise labeled as containing a certain fineness of gold, and Defendants knew or should have known that Plaintiff and putative class members rely on such information, in addition to other advertising, when making purchasing decisions. Defendants are also aware that the greater the gold fineness, the more expensive a given item of jewelry is. (e.g., 14k costs more than 10k *Ceterus peribus*).

8. Some or all of Defendants' gold jewelry is marketed and sold as 10k or 14k gold. Plaintiffs' ring, for instance, was sold as 14k gold. In fact, Plaintiffs' ring contains less gold than indicated and promised. Defendant's acts or omissions amount to a violations of the Gold Stamp Act (15 USCA §295 *et seq.*), breach of contract, breach of warranty and negligence . Moreover, Defendants were unjustly enriched due to its' acts and/or omissions.

9. Defendant manufactured, distributed, marketed and/or sold gold products as 14 karat gold when in fact the Defendant knew or should have known that the gold jewelry contained less gold than indicated on the stamp, marketing and other advertising affixed or packaged with the item of jewelry. The Defendant willfully, wantonly

and/or negligently withheld from Plaintiffs and other similarly situated persons the fact that the gold jewelry contains less gold than promised and required by the Gold Stamp Act[1]. Such information was withheld so that Defendants would unjustly profit from the sale of such jewelry. Defendants induced Plaintiffs and other similarly situated individuals to purchase jewelry by withholding from Plaintiffs and others the true gold content of the jewelry in question.

10. Defendants had an affirmative duty to insure that the gold jewelry it sells is of the gold fineness indicated on the karat stamp, packaging, tags and other advertising. Defendant failed insure the fineness of the gold jewelry sold, thereby causing the damage herein alleged.

## JURISDICTION

11. This Court has exclusive original jurisdiction of Count One of the First Amended Complaint based on federal question jurisdiction (Gold Stamp Act) pursuant to 28 U.S.C. § 1331.

12. In addition, this Court may exercise supplemental jurisdiction over the state law causes of action enumerated in Counts Two through Five of the First Amended Complaint pursuant to 28 U.S.C. § 1367. The supplemental claims are so related to the claim in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. The supplemental claims do not raise novel or complex issues of State law; nor do the claims predominate over the claim in Count One which the district court has original

---

[1] 15 U.S.C. §§ 291-300 has been known at different times as the "National Gold and Silver Stamping Act", the "Gold Labeling Act" and the "Jewelers' Liability Act". For the purposes of this Complaint, it will be referred to as the "Gold Stamp Act".

jurisdiction.

13. Defendants have agents in this district, are doing and continue to do business in the Northern District of Alabama.

14. Moreover, the omissions to disclose material facts were transmitted by the Defendants or its' agents in this District to the Plaintiffs and putative class, the torts and wrongs alleged were committed in the jurisdiction of this Court, significant damages and losses alleged herein were suffered in this jurisdiction, the property rights of the Jefferson County, Alabama plaintiffs were damaged or impaired in this jurisdiction, and the defendant's wrongful activities were directed by or on their behalf into this jurisdiction, all as more particularly hereinafter appears.

## CLASS ACTION ALLEGATIONS

15. This lawsuit is a putative class action pursuant to Rule 23 of the *Federal Rules of Civil Procedure*. Plaintiffs bring this action on behalf of themselves and all members of a class composed of persons in the United States who purchased jewelry from defendants which contained less gold fineness than indicated on the Karat stamp, packaging, tags or advertising sold by defendants for the six (6) years preceding the filing of the present suit.[2]

16. Plaintiffs aver that the class is so numerous that joinder of all members is impracticable, and upon that information and belief the total membership of the class is in excess of 10,000 people, assuming each retail store sold ten (10) under-

---

[2] Excluded from the Class definition are employees and agents of Sterling/Kay, the Judge and his/her relatives back to the 2nd degree of affinity, officers and directors of Sterling Inc., and counsel for Plaintiffs and putative class.

-4-

17. karated items of gold jewelry during the preceding six (6) years.

17. The questions of law and fact are common to each member of the class, such as whether Defendants were in breach of contract, negligent, unjustly enriched or violated the Gold Stamp Act, by manufacturing, producing, distributing, marketing and/or selling jewelry which is marked or advertised in a manner indicating a greater degree of gold fineness than the actual fineness of the gold, as is required, contracted for and indicated on the karat stamp and other advertising affixed to the jewelry.

18. Plaintiffs' claims as representatives of the class, are typical of the claims of the class. Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have no conflicts that would otherwise make them unfit class representatives.

19. Plaintiffs aver that the prerequisites for class action treatment apply to this action and that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action. Plaintiffs further state that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of this class will not be difficult.

## COUNT ONE–GOLD STAMP ACT

20. The preceding paragraphs of this Complaint, and any additional factual averments set forth in any subsequent sections of this Complaint, are deemed to be repeated and incorporated by reference in this Count.

21. The under-karated jewelry was transported, or Defendants' had the jewelry

22. Defendants had an affirmative duty to comply with the Gold Stamp Act. Each Defendant breached its' duty in selling, distributing or manufacturing under-karated jewelry[3] (i.e., gold whose fineness is less than the amount indicated on the karat stamp (taking into account the acceptable tolerance) and other representations affixed to the jewelry or packaging). As such, Defendants are strictly liable as a matter of law for violations of the Gold Stamp Act.

## COUNT TWO–BREACH OF CONTRACT

23. The preceding paragraphs of this Complaint, and any additional factual averments set forth in any subsequent sections of this Complaint, are deemed to be repeated and incorporated by reference in this Count.

24. Plaintiffs and the putative class are direct and intended third-party beneficiaries of contracts between Defendants and have themselves contracted directly with Defendant Sterling, DBA Kay Jewelers, Inc.

25. Defendants' contractual obligations require them to provide gold jewelry with the stamped karat fineness of gold in each piece of jewelry.

---

[3] 15 U.S.C. § 295 provides in part: ". . . the actual fineness of such gold or alloy shall not be less by more than *three one-thousandth parts* that the fineness indicated by the mark stamped, branded, engraved, or printed upon any part of such article, or upon any tag, card, or label attached thereto, or upon any box, package, cover, or wrapper in which such article is incased or inclosed." Without regard to the permissible tolerance provided by the act, 10k gold must be 417 parts per thousand pure gold; 12k gold must be 500 parts per thousand pure gold; 14k gold must be 583 parts per thousand of pure gold, and 18k gold must be 750 parts per thousand of pure gold. The allowable tolerance under the Gold Stamp Act would decrease each number by three (3) parts per thousand.

26. Defendant's contractual obligations include, among other things, to insure that each piece of jewelry contains the actual fineness of gold indicated on the karat stamp and advertising. Defendants breached its contractual obligations to Plaintiffs and putative class members by failing to provide the products as promised, or have performed their contractual undertakings with such negligence and wantonness as to constitute a breach of the contract.

27. As a direct and proximate result of Defendant's breach, Plaintiff suffered damage.

### COUNT THREE–NEGLIGENCE

28. The preceding paragraphs of this Complaint, and any additional factual averments set forth in any subsequent sections of this Complaint, are deemed to be repeated and incorporated by reference in this Count.

29. Defendants had a duty to provide jewelry that contained the indicated fineness of gold in each item sold. Defendant breached it's duty in selling, distributing or manufacturing under-karated jewelry (i.e., gold which is marked or labeled in a manner indicating a greater fineness than the actual fineness of the gold). Such breach was the cause in fact and proximate cause of the damages Plaintiffs and putative class members suffered in buying under-karated gold jewelry. Defendant suppressed and concealed this information from Plaintiffs and putative class for the purpose of enriching itself.

### COUNT FOUR–BREACH OF WARRANTY

30. The preceding paragraphs of this Complaint, and any additional factual averments

set forth in any subsequent sections of this Complaint, are deemed to be repeated and incorporated by reference in this Count..

31. The jewelry manufactured, distributed, marketed and/or sold by the Defendants are "goods" as defined by the Uniform Commercial code. In accordance with the Uniform Commercial Code, the Defendant warranted that the product conformed to the karat fineness stamped or otherwise advertised on the jewelry (e.g. 14k). In particular, Defendant warranted that each piece of gold jewelry contained the indicated fineness of gold.

32. Defendants held themselves out to Plaintiffs, and others similarly situated, as having special knowledge and skills with respect to gold jewelry. Defendants warranted that the gold jewelry contained the indicated fineness of gold (e.g. 14k in the case of the named Plaintiffs). Without sophisticated testing equipment, Plaintiffs and putative class cannot ascertain that the jewelry is under-karated.

33. The Defendant breached said warranty in that the jewelry did not have the warranted fineness of gold.

34. Plaintiffs, and the putative class members as specified herein, were damaged through said breach of warranty by buying jewelry which they would not have purchased if the true gold fineness had been disclosed. Alternatively, Plaintiffs and putative class would have been willing to pay less for jewelry that contained less gold.

35. Plaintiffs put Defendant Kay (Sterling) on notice of the breach by visiting the Fairfield Kay Jewelers store complaining that the ring was not right because it was reacting to Mr. Payne's finger and causing a rash. Defendant refused to replace the ring or admit anything was wrong with the ring. Defendant Kay was also notified

by letter that Plaintiffs' ring was under-karated. Plaintiffs requested that they, as well as the putative class be given new jewelry that contains the correct gold fineness.

## COUNT FIVE–UNJUST ENRICHMENT/EQUITY

36. The preceding paragraphs of this Complaint, and any additional factual averments set forth in any subsequent sections of this Complaint, are deemed to be repeated and incorporated by reference in this Count.

37. Plaintiffs, individually and on behalf of the class they seek to represent, purchased gold jewelry from the Defendant under the mistaken belief that the jewelry, in fact, contained the indicated fineness of gold (e.g., 10k or 14k).

38. Defendant sold the gold jewelry with knowledge that the actual gold fineness was less than indicated or alternatively, under the mistaken belief that the gold jewelry sold was as represented and stamped.

39. Equity and good conscience requires that the Defendants make restitution and disgorgement to Plaintiffs and putative class for jewelry purchases of under-karated gold jewelry.

40. In addition, Plaintiffs seek full and complete equitable relief, including specific performance of all Defendant's duties, full restitution to Plaintiffs and class members for all monies expended as a result of Defendant selling under-karated gold jewelry, and all other equitable relief necessary to make Plaintiffs and putative class whole, including an injunction requiring Defendant to test the gold fineness of its jewelry before offering it for sale in the United States.

## PRAYER FOR RELIEF

WHEREFORE, the foregoing averments considered, Plaintiffs demand judgment for themselves and others similarly situated as follows:

a) Compensatory, incidental, consequential and punitive damages against Defendants for all damages according to proof at trial;

b) Equitable relief in accordance with proof at trial, including an injunction requiring Defendant to test the gold fineness of its jewelry prior to offering it for sale;

c) Taxing against Defendants, all fees and costs of any expert, and all discovery and deposition costs and expenses, and other costs of this litigation, as costs of this action, and awarding Plaintiffs and class the costs, reasonable attorneys' fees and expenses of this action; and

d) Granting such other and further relief, including, without limitation, injunctive relief, corrective advertising, declaratory relief, specific performance and other forms of equitable relief, as may be just, premises considered. Plaintiffs offer to do equity.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by struck jury of all issues in this Complaint triable to the jury.

Campbell & Baker, LLP
Attorneys for Plaintiffs

*[signature]*

G. Richard Baker (BAK035)
Bert J. Miano (MIA001)

**OF COUNSEL**:
CAMPBELL & BAKER, LLP
825 Financial Center
505 Twentieth Street North
Birmingham, AL  35203
205.278.6650  voice
205.278.6654  fax
rbaker@campbell-baker.com
bmiano@campbell-baker.com

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the above and foregoing pleading upon the defendant parties to this action by placing a copy of same in the U. S. Mail, postage prepaid, properly addressed as follows:

Crawford S. McGivaren, Jr.
Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP
2001 Park Place North, Suite 700
Birmingham, Alabama 35203

on this the __27__ day of __April__, 2005.

OF COUNSEL